**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | |
| | **:** | **CRIMINAL NO. 05-441 (RCL)** |
| **JEROME H. JONES,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS**
**EVIDENCE**

The United States, by and through its attorney, the United States Attorney for the District

of Columbia, respectfully opposes defendant's motion to suppress evidence.  In support of this

motion, the government relies on the following points and authorities and such other points and

authorities that may be adduced at a hearing on the matter:

**I.  Factual Summary**

1.      The defendant has been charged in a one-count indictment with Unlawful

Possession of a Firearm and Ammunition by a Person Convicted of Crime Punishable by

Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1).

2.      At a hearing or trial in this matter, government counsel expects the evidence for

this charge to demonstrate substantially as follows:  On October 15, 2005, at approximately

12:15 a.m., members of the Metropolitan Police Department's 7th District Vice Unit were on

patrol in the 1100 block of Talbert Street, SE, Washington, D.C.  The officers observed the

defendant, Jerome Jones, standing with a group of approximately fifteen to twenty other people,

some of whom appeared to be drinking alcohol.  They further observed Mr. Jones  holding a

brown paper bag that contained bottles of vodka and cranberry juice in his arm, along with a large, white Styrofoam cup in his hand.  The defendant made eye contact with the officers and then began to walk away.    As the police officers approached the defendant, he blurted out, "I ain't doing nothing.  I'm just drinking."  At that time, the officers attempted to stop Mr. Jones at which time he pushed them away and reached his hand to the right side of his waistband.  While attempting to keep the defendant from accessing whatever he might have had in his waistband, a struggle ensued between Mr. Jones and the police.  Fearing that the defendant was armed, the officers attempted to pat down the area where he kept reaching, and the defendant resisted these attempts.  Eventually, the defendant was subdued and a handgun was recovered from the right side of his waistband.  He was placed under arrest at that time.  The handgun recovered turned out to be a fully functional Ruger 9mm semi-automatic pistol, loaded with ten rounds in the magazine and one round in the chamber.

## II.  Argument

Defendant, Jerome H. Jones, moves to suppress all physical evidence and statements obtained in this case, alleging Fourth and Fifth Amendment violations.  For all of the reasons cited below, defendant's motion to suppress should be denied.

### A.  The Police had Probable Cause to Arrest the Defendant

The police officers observed defendant holding what appeared to be open containers of an alcoholic beverage while on a public street.  As they approached to confirm or dispel their reasonable articulable suspicion, the defendant voluntarily and spontaneously blurted out words, "I ain't doing nothing.  I'm just drinking."  In so doing, the defendant triggered probable cause for the police to initiate his arrest, in that he confirmed that he was committing an arrestable

offense in their presence.  Such action violates D.C. Code § 25-1001 (Drinking of alcoholic

beverage in public place prohibited; intoxication prohibited).  A law enforcement officer may

make a warrantless arrest of "a person who he has probable cause to believe has committed or is

committing an offense in his presence."  D.C. Code § 23-581(a)(1)(B).  See also United States v.

Watson, 423 U.S. 411 (1976); Hutcherson v. United States, 345 F.2d 964 (D.C. Cir.) cert.

denied, 382 U.S. 8943 (1965) (officer observing man in an alley drinking from a bottle labeled

wine had probable cause to arrest without warrant for violation of D.C. Code § 25-[1001]).

Thus, when the officers were informed by the defendant that he was possessing and drinking an

open container of an alcoholic beverage on a public street, they had probable cause to arrest him

for violation of D.C. Code § 25-1001.

   Once a suspect is validly placed under arrest, the police need no additional justification

for conducting a full search of the suspect's person.  Gustafson v. Florida, 414 U.S. 260 (1973);

United States v. Robinson, 414 U.S. 218 (1973).[1]  Therefore, the police officers' search of the

---

[1]    Because the officers had probable cause to arrest defendant, the government does
not need to establish that the officers had the articulable suspicion necessary to justify a Terry
stop.  However, if this Court should somehow find that the officers lacked probable cause to
arrest, the officers still had reasonable articulable suspicion of criminal activity afoot in that the
defendant kept making deliberate, furtive gestures towards his waistband during the time the
officers were attempting to talk with him about the drinking in public.  The officers are not
required to wait until the defendant successfully draws his weapon and gets it ready to fire before
they may take steps to protect their well being.  It is well settled that a police officer may briefly
detain a suspect if he has a reasonable articulable suspicion that criminal activity may be afoot.
Terry v. Ohio, 392 U.S. 1 (1968); United States v. Hensley, 469 U.S. 221, 227-29 (1985).
"Under the Fourth Amendment ... a policeman who lacks probable cause but whose
'observations lead him reasonably to suspect' that a particular person has committed, is
committing, or is about to commit a crime, may detain that person briefly in order to 'investigate
the circumstances that provoke suspicion." United States v. Brignoni-Ponce, 422 U.S. 873, 881
(1975).  Reasonable suspicion is a "commonsensical proposition" that credits the officer's
special training and practical experience, United States v. Lender, 985 F.2d 151, 154 (4th Cir.
1993), and it is a lesser showing than probable cause.  United States v. Perrin, 45 F.3d 869, 872

defendant pursuant to his lawful arrest was permissible and the fruit of that search, i.e., the Ruger semi-automatic pistol, is admissible evidence.

### B. There was No Miranda Violation Regarding the Defendant's Voluntary Statement

The defendant moves to suppress a statement which he alleges, without factual foundation, was made during custodial interrogation. Police paperwork reflects, and the government proffers that a hearing will so adduce, that the defendant's statements were spontaneously made under no questioning. Additionally, the defendant was not in custody at the time he made the statements.

The Supreme Court has stressed that the Miranda safeguards come into play only when the defendant is subject to both custody and interrogation. Rhode Island v. Innis, 446 U.S. 291, 297 (1980); Beckwith v. United States, 425 U.S. 341, 347 (1975). Thus, in the absence of either factor, Miranda safeguards do not apply. In the instant case, the defendant's statements were made at a time when he was not in custody, and were not made in response to police interrogation. It simply did not constitute probing and accusatory interrogation; indeed, it did not constitute interrogation in any respect.[2]

---

(4th Cir. 1995), cert. denied 115 S.Ct. 2287 (1995). Even innocent factors considered together can amount to a reasonable suspicion. United States v. Sokolow, 490 U.S. 1, 9-10 (1989).

[2]    Seizure and custody are not the same thing. An individual is "'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that [s]he was not free to leave." United States v. Mendenhall, 446 U.S. 544, 554 (1980). In the instant case, even if the approach of the officers upon the group of individuals, including the defendant, constituted a "seizure" in the Fourth Amendment context, there was still no implication of the defendant's Fifth Amendment right to Miranda warnings, because the requisite custody element remains absent.

>The procedural safeguards of <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), are implicated only when a person is involved in custodial questioning or its 'functional equivalent,' <u>i.e.</u> 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the subject.'

<u>Rhode Island v. Innis</u>, 446 U.S. 291, 301 (1980).  Custody, possibly implicating Fifth Amendment concerns, requires more than a Fourth Amendment seizure.  "[I]nterrogation is custodial, and <u>Miranda</u> warnings are required, 'only in those cases in which there has been a formal arrest or restraint on freedom of movement of the degree associated with formal arrest.'" <u>California v. Beheler</u>, 463 U.S. 1121, 1125 (1983) (per curiam).  Even if defendant had been seized, he "was not in custody to the degree associated with formal arrest."  <u>Berkemer v. McCarty</u>, 468 U.S. 420, 439-440 (1984).

Here, the defendant was never subjected to unwarned custodial interrogation in violation of the Fifth Amendment.  All statements were made prior to being formally arrested, and prior to any restraint on freedom of movement of the degree associated with formal arrest.   The police were not required, therefore, to provide <u>Miranda</u> warnings to the defendant prior to his spontaneous and voluntary statements.

"The test for determining whether a person is in custody is an objective one and focuses upon 'how a reasonable [person] in the suspect's position would have understood [his or her] situation.'" <u>Berkemer v. McCarty</u>, 468 U.S. 420, 442 (1984).  Objectively, defendant would have understood his situation here to be non-custodial.  The stop had the earmarks of an investigatory inquiry, rather than a "station house third degree."  There is nothing to suggest that the police conduct under consideration here was coercive or excessively intimidating.

### C. The Defendant's Statements Were Voluntary

The test for voluntariness is whether, under the totality of the circumstances, "coercive police activity" has "overborne" a suspect's "will." Colorado v. Connelly, 479 U.S. 157, 167 (1986). "[P]olice overreaching" is a "crucial element" of an involuntary statement, for "[a]bsent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." Connelly, 479 U.S. at 163-164. Using this standard, clearly, the defendant's statements were voluntary. They were made spontaneously. "This is not a case where the police carried on a lengthy harangue in the presence of the suspect." Rhode Island v. Innis, 446 U.S. 291 (1980).

Regarding defendant's claim that "the presence of an unspecified number of police officers moving toward Mr. Jones and the people with him for no apparent reason constituted a situation that was coercive and overwhelming," Defendant's Motion at Page 4, the case of Michigan v. Chesternut, 486 U.S. 567, 573 (1988) is instructive. In Chesternut, 486 U.S. at 575, the United States Supreme Court held that "[w]hile the very presence of a police car driving parallel to a running pedestrian could be somewhat intimidating, this kind of police presence does not, standing alone, constitute a seizure. Id. This is a very similar to the situation in the case at bar. The Chesternut case compels the conclusion that no seizure occurred at the moment in time when the police approached the defendant to determine whether he was possessing an open container of alcohol, even if he was somewhat intimidated. In any event, his blurted statement should be admissible, as there is no evidence that his will was overborne, or that he was in any manner coerced into making that voluntary, spontaneous statement.

WHEREFORE, for the reasons stated above, the United States respectfully requests that

this Court deny the defendant's motion to suppress evidence.

Respectfully submitted,

KENNETH L. WAINSTEIN
United States Attorney
Bar No. 451058

_____

Robert J. Feitel
Assistant United States Attorney
DC Bar No. 433-180
Federal Major Crimes Section
555 Fourth Street, N.W.
Room #4231
Washington, DC 20530
Phone: 202.353.3706
Fax: 202.514.6010

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a copy of the foregoing United States' Opposition to Defendant's Motion Suppress Evidence to be served upon the attorney for the defendant, Ms. Rita Bosworth, Assistant Federal Public Defender, this 9th day of February 2006.

_____
Robert J. Feitel
Assistant United States Attorney