UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 05-441-01 (RCL) |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JEROME JONES | : | |

**GOVERNMENT'S MOTION FOR GUIDELINES CREDIT AND**
**MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves the Court, pursuant to § 3E1.1(a) of the Sentencing Guidelines, to adjust the Defendant's offense level down two levels reflecting the Defendant's acceptance of responsibility for this offense. The United States also submits this memorandum in aid of sentencing.

**I.    BACKGROUND**

The defendant was charged in a one-count indictment with Unlawful Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. §§ 922(g)(1). On August 16, 2006, the Defendant pled guilty to Unlawful Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1). At that time the Defendant admitted to the following:

On October 15, 2005, at approximately 12:15 a.m., Metropolitan Police Department Officer Leroy Rollins approached Defendant Jones, who was standing in the 1100 block of Talbert Street, Southeast, Washington, D.C. During their encounter, Defendant Jones possessed a loaded, Ruger 9 mm semi automatic pistol, which Officer Rollins ultimately recovered. The pistol was loaded with 10 rounds of ammunition in the magazine and one round in the chamber.

The gun and ammunition that were recovered from Defendant Jones were not manufactured in the District of Columbia, and they were shipped to the District of Columbia through interstate commerce.

At the time of his arrest, Defendant Jones had previously been convicted of felonies in the District of Columbia, in Superior Court criminal case numbers F-451-93 and F-2320-93.

## II. SENTENCING CALCULATION

### A  Statutory Minimums and Maximums

Pursuant to 18 United States Code §922 and § 924, Count One carries a maximum sentence of 10 years imprisonment, a $250,000 fine and up to three years of supervised release.

### B.  Sentencing Guidelines Calculation

The Guidelines calculation utilized in the Presentence Investigation Report ("PSR") calculates the Defendant's total offense level at 22. See PSR ¶ 55. (This calculation contemplates a two level departure for acceptance of responsibility.) The PSR calculates the Defendant's criminal history as Category V. See PSR ¶ 55. Therefore, the PSR calculates the guideline range for the Defendant at 77 to 96 months. See PSR ¶ 55.

## III. GOVERNMENT'S RECOMMENDATIONS

### A.  Acceptance of Responsibility

The government agrees that the Defendant's base offense level should be decreased by two points pursuant to Section 3E1.1 of the Sentencing Guidelines. He entered a guilty plea, thereby admitting the conduct comprising the offense, and he has apparently cooperated in the pre-sentence investigation. Accordingly, the government is moving the Court to grant a two-level decrease in base offense level provided for in § 3E1.1(a) of the Sentencing Guidelines.

B. <u>Application of the Federal Guidelines post-Booker</u>

Pursuant to the plea agreement between the government and the Defendant, the Court should impose a sentence at the low end of the guidelines range. In <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, Title 18, United States Code, Section 3553(b)(1). <u>Booker</u>, 125 S. Ct. at 756. However, the Court expressly refused to invalidate the Guidelines in their entirety. To the contrary, the Court upheld the remainder of the Guidelines as the most appropriate benchmark for informing courts as to the most reasonable sentence for a particular defendant who has committed a particular crime. Indeed, it remains the case that if the sentencing court imposes a sentence that is outside the range as set forth in the Guidelines, the Court must state in a written order of judgment and commitment the specific reason for the imposition of a sentence different from that described in the Guidelines. <u>See</u> 18 U.S.C. Section 3554(c)(2). The sentence will then be subject to review by courts of appeals for "reasonableness." <u>Id.</u> at 769.

In <u>Booker</u>'s wake, this Court must continue to resolve disputed questions of fact and law and correctly calculate a defendant's sentence under the existing Sentencing Guidelines. <u>See</u> Fed. R. Crim. P. 32(i)(3)(B) (Court must rule on unresolved objections to the Presentence Report or determine that resolution not necessary to sentencing). "The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." <u>Booker</u>, 125 S. Ct. at 767 (citing 18 U.S.C. Sections 3553(a)(4)&(5) (Supp. 2004)).

3

In light of this mandate – and the continued requirement of written explanations for sentences that fall outside of the range called for by the Guidelines and the new standard of "reasonableness" review – it is plain that a sentence within the Guidelines, while not required, is reasonable per se. Not only is a sentence within the Guideline range reasonable per se, but it also accommodates the goal, endorsed by both Congress and the Supreme Court, of meting out fair and uniform sentences.

The Guidelines, aiming to achieve the uniform and appropriate treatment of like crimes, represent the distillation of two decades of careful study of sentencing practices across the country, and correlate as well to the varying severity of crimes as defined by Congress. The Guidelines, consisting of offense characteristics and various grounds for departure, address the considerations relevant to sentencing, as articulated in 18 U.S.C. Section 3553(a), such as "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed -- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

Indeed, the Sentencing Commission formulated the Guidelines only after initially canvassing prior sentencing practice and attempting to identify and assign weights to all the factors – both aggravating and mitigating – that judges traditionally used in determining an

appropriate sentence.  See United States Sentencing Comm'n, Supplementary Report on the Initial Guidelines and Policy Statements 16-17 (1987); see also 28 U.S.C. Section 994(m) (requiring Commission to "ascertain the average sentences imposed . . . prior to the creation of the Commission"); Comprehensive Crime Control Act of 1984, S. Rep. No. 98-225, at 168 (Commission should produce a "complete set of guidelines that covers in one manner or another all important variations that commonly may be expected in criminal cases").  Moreover, since the Guidelines were adopted, the Sentencing Commission has continued to study district court and appellate sentencing decisions and to "modify its Guidelines in light of what it learns." Booker, 125 S. Ct. at 766; see id. at 767 (Sentencing Commission will continue "collecting information about actual district court sentencing decisions  . . . and revising the Guidelines accordingly").

It thus remains true that, absent unusual circumstances, the sentence in a criminal case should fall within the Guideline range as determined by this Court.  Each Supreme Court Justice in the various opinions in Booker recognized the express national policy goals, as articulated by Congress, that sentences be uniform across the country, to the extent possible, and that sentences be based on the offender's actual conduct and history.  See, e.g., id. at 761 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); id. at 759 (same) ("Congress' basic statutory goal -- a system that diminishes sentencing disparity -- depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction."); id. at 783 (dissenting opinion of Stevens, J.) ("The elimination of sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); id. at 789 (dissenting opinion of Scalia, J.) ("the

5

primary objective of the Act was to reduce sentencing disparity."). Since the Guidelines currently represent the only extant benchmark to encourage uniformity and thus the only tool to implement Congress' vision of sentencing uniformity and fairness, Guideline range sentences are currently the only mechanism available to implement Congress' basic statutory goals.

Booker, to be sure, departs from the prior practice of automatic reversal that would have accompanied the failure to sentence a defendant within the Guidelines. Such a sentence will now be reviewed instead for its "reasonableness." See Booker, 125 S. Ct. at 764. Nevertheless, the Guidelines -- resulting as they do from years of study of sentencing practices, crime statistics, national crime policy, and consideration of the factors that inform sentencing, see 18 U.S.C. Section 3553(a) – provide the most concrete yardstick against which to measure what would be unreasonable. Booker not only prevents courts from substituting their individual judgment about the appropriateness of the Guidelines range without explaining with specificity their reasoning, Booker also continues to subject the explanation of the decision to sentence outside of the correctly calculated range to a court of appeals reasonableness review. See 18 U.S.C. Section 3553(c) (mandating consideration of the Guidelines); 18 U.S.C. Section 3553(c)(2) (mandating written explanations for imposing a sentence outside of the applicable Guideline range); 18 U.S.C. Section 3742(f)(1) (mandating court of appeals to set aside a sentence imposed as a result of an incorrect application of the Guidelines); 18 U.S.C. Section 3742(f)(2) (mandating court of appeals to set aside a sentence outside the Guidelines range when the district court fails to provide a required statement of reasons in the judgment and commitment order).

Fidelity to the Guidelines best accomplishes the purpose of fair and consistent sentencing and should occur absent unusual circumstances. This is so, said the court in United States v.

Wilson, 350 F. Supp. 2d 910 (D. Utah, 2005) – the day after Booker was decided – because the Guidelines represent the product of an expert commission, that has studied the sentencing process at great length, under the specific mandate of Congress, to fashion recommended sentences that carry out the purposes defined by Congress.  The resulting Guidelines, Wilson held, plainly reflect the public's will, as expressed by their democratically elected representatives, in that Congress has repeatedly approved of the Guidelines or acted to adjust them to congressional preference.  Wilson further observed that guided sentencing appears to have had a positive impact in deterring criminal conduct throughout the country, and thus serves the purpose of deterrence as well as punishment and fairness.  For all of these reasons, Judge Cassell determined that "the court will give heavy weight to the Guidelines in determining an appropriate sentence.  In the exercise of its discretion, the court will only depart from those Guidelines in unusual cases for clearly identified and persuasive reasons." Id. at 912.  A non-Guidelines sentence would, in the ordinary or usual case, unreasonably thwart legislative intent – in particular, the overriding concern with uniformity and the prevention of unfair disparities for similarly-situated defendants.

In this case, as explained further below, no unusual circumstances exist that warrant an exception to the preference for guideline sentencing.  Therefore, the government respectfully recommends that the Court sentence the Defendant within the Federal Guidelines range calculated in the Presentence Report.

    C.    Basis for Government's Sentencing Recommendation

The Defendant has received a substantial benefit from this plea, and all the leniency he should receive is encompassed in the plea. The defendant received a two point decrease in his

offense level as a result of his acceptance of responsibility, and the government agreed to ask for the low end of the applicable guidelines range.

Although he is young, the Defendant's criminal history spans at least twelve years. As noted above, the Defendant has multiple prior felony drug convictions, and significantly, the Defendant committed the instant offense less than one month after being released on parole in those cases. In the case now before the Court, the Defendant has admitted to possessing a loaded 9 mm semiautomatic pistol, and in a city where guns are illegal, and gun violence so damaging, such behavior must not be tolerated.

### IV.   CONCLUSION

Wherefore, the government respectfully requests that the Court sentence the Defendant to 77 months of incarceration.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney
D.C. Bar 498-610

_____
Precious Murchison
Assistant United States Attorney
Federal Major Crimes Section
Maryland Bar
555 4th Street, N.W.
Washington, DC 20530
(202) 307-6080
Fax: 353-9414

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was served by first class mail to counsel for the Defendant, Rita Bosworth, Esquire, 625 Indiana Avenue, N.W., Washington, D.C., 20004, and by facsimile, facsimile number 202-208-7515 on this _____ day of December 2006.

_____
Precious Murchison
Assistant United States Attorney